## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZAKIYYAH MOORE<br>1723 W. 5th Street<br>Wilmington, DE 19805 | : : : : | CIVIL ACTION |
| Plaintiff, | : : | NO: |
| v. | : : | |
| ELWYN OF PENNSYLVANIA AND DELAWARE<br>111 Elwyn Road<br>Elwyn, PA 19063 | : : : : : | **JURY TRIAL DEMANDED** |
| Defendant. | : : | |

## CIVIL ACTION COMPLAINT

Zakiyyah Moore (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Elwyn of Pennsylvania and Delaware (hereinafter referred to as "Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. Plaintiff resides in and is a citizen of Delaware.

3. Upon information and belief, Elwyn of Pennsylvania and Delaware is incorporated under the laws of Pennsylvania with headquarters and/or principal place of business in same, rendering it a citizen of Pennsylvania.

4. This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of North Carolina, and Defendant is a citizen of Pennsylvania, and the amount in controversy exceeds $75,000.

5. This action is also being initiated pursuant to federal laws (ADA) and therefore, the United States District Court for the Eastern District of Pennsylvania also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.

6. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

7. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

8. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## **PARTIES**

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff is an adult individual with an address as stated in the above-referenced caption.

11. Elwyn of Pennsylvania and Delaware is a nonprofit human services organization that provides a wide range of programs and services to children and adults with developmental and physical disabilities, with headquarters at the above-captioned address.

12. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff was hired by Defendant on or about April 4, 2004, as a Direct Support Professional ("DSP"), and in total, Plaintiff was employed with Defendant for over 19 years, until her unlawful termination (discussed further *infra*) on or about November 7, 2022.

15. During her employment with Defendant, Plaintiff fell under the supervision of several individuals, including but not limited to: Supervisor, Alanna Welch (hereinafter "Welch"), Yungor Kemah (hereinafter "Kemah"), Chris Walker (hereinafter "Walker"), Operations Manager, Katrina Rothwell (hereinafter "Rothwell"), and Director of Operations, Jill Rogers (hereinafter "Rogers").

16. Throughout Plaintiff's employment with Defendant, she was a hard-working employee who performed her job well.

17. Plaintiff has and continues to suffer from several ADA-qualifying disabilities, such as diabetes and asthma (and associated complications).

18. On or about August 10, 2022, Plaintiff also suffered work-related injuries to her back (including disc herniation) pulling a patient from a wheelchair van.

3

19. Plaintiff immediately reported her aforesaid work-related injuries and applied for worker's compensation benefits.

20. Following her aforementioned work-related injuries/serious health conditions, Plaintiff was treated/evaluated by Defendant's worker's compensation doctors and advised to remain out of work for several days.

21. Despite her aforementioned health conditions, Plaintiff was able to work; however, she did (at times) require some reasonable medical accommodations.

22. For example, following her evaluation by Defendant's worker's compensation doctors, Plaintiff was placed on light duty work of no lifting over 10 pounds, avoiding prolonged sitting and standing, and performing mostly sedentary work (all reasonable accommodations under the ADA).

23. Plaintiff also required injections and physical therapy.

24. For the next few months, Plaintiff further required a few days off from work here and there to care for and treat for her aforesaid work-related injuries/serious health conditions.

25. Despite being placed on light-duty work by Defendant's worker's compensation doctors and that Defendant could have easily granted the same by providing desk work, laundry, and/or other accommodations, Defendant's management exhibited extreme frustration with Plaintiff's restrictions, regularly requesting and requiring her to work against her doctors' recommendations (including being asked to lift over 10 pounds).

26. For example, on or about October 10, 2022, Welch assigned Plaintiff to a resident who needed assistance getting up, despite that Plaintiff was not supposed to be lifting over 10 pounds.

27. Fearful of losing her job, Plaintiff cared for the aforementioned resident on or about October 10, 2022, and was able to get her up with the assistance of co-worker.

28. However, Plaintiff was in so much pain from being required to work against her doctors' restrictions that she went to the hospital that evening (October 10, 2022) and was then pulled out of work by Defendant's worker's compensation doctors until on or about November 1, 2022.

29. Notably, while out on medical leave, on or about October 20, 2022, Kelly Duffy (hereinafter "Duffy"), Defendant's worker's compensation claims management personnel, spoke with Plaintiff by phone and informed her that she should not be lifting or assisting with any patients until further notice, as it went against her worker's compensation doctors' medical restrictions.

30. Nonetheless, on or about November 5, 2022, just a few days after returning from medical leave, Welch assigned Plaintiff a 1 on 1 resident for a.m. care.

31. The aforementioned resident assigned to Plaintiff on or about November 5, 2022, could walk with a walker, but the resident required assistance with the walker whereby a DSP would utilize a gait belt that would hold on to the resident when the resident was walking. The resident also required assistance getting out of bed (which included lifting her) and changing, as well as support while bathing.

32. Plaintiff immediately informed Welch that this assignment went against Plaintiff's aforementioned doctor's restrictions of no lifting over 10 pounds and mostly sedentary work and asked that Welch please abide by Plaintiff's doctor's restrictions.

33. Plaintiff further stated to Welch that to require Plaintiff to try to lift and support the resident could result in injury to both Plaintiff and the resident, as Plaintiff did not have the strength and ability to lift the resident or catch her if Plaintiff became unstable.

34. Despite having informed Welch that the aforesaid November 5, 2022 resident assignment posed a safety risk and went against Plaintiff's medical restrictions, Welch failed to honor Plaintiff's medical restrictions, stating "she [the resident] has a walker, you can handle it."

5

35. Plaintiff repeatedly informed Welch and another nurse, beginning from 6:30 a.m. and throughout the day, that she was unable to assist the resident with arising from bed, and that another DSP would need to be assigned, but her requests were completely ignored.

36. Nonetheless, Plaintiff fed and cared for the resident to the best of her physical ability, but upon Plaintiff's belief at the time, Welch failed to provide assistance or assign the resident to another DSP despite Plaintiff's repeated visits to Welch throughout the day. As a result, the resident was not removed from her bed until after Plaintiff's shift.

37. Plaintiff later discovered, however, through testimony in her worker's compensation case that Welch had actually asked another DSP working that day, Sanchia Browne (hereinafter "Browne") to assist in getting the resident out of bed during Plaintiff's shift to enable the resident to be cleaned and changed, but Browne never assisted Plaintiff with or cared for the patient during the a.m. shift.

38. Upon information and belief, Browne was then assigned to the same resident for the second shift, during which she finally got the resident out of bed and changed her.

39. The following day, on or about November 6, 2022, Plaintiff was assigned to laundry duty, which largely comported with Plaintiff's light-duty restrictions.

40. However, on or about November 7, 2022, Plaintiff was abruptly suspended and required to remain out of work, pending an investigation for purported "neglect" of the resident she had been assigned on or about November 5, 2022.

41. Plaintiff was then interviewed by management, who required Plaintiff to provide a statement.

42. When Plaintiff reiterated to management that she had informed Welch and others several times that she was unable to assist the resident on November 5, 2022, as a result of her doctor-recommended restrictions, Plaintiff was informed for the first time that Defendant's

6

management were purportedly never informed that Plaintiff had medical restrictions, which was patently untrue and had in fact been confirmed by Duffy.

43. When Plaintiff replied to Defendant's management that she had provided several doctors' notes, outlining her restrictions of light duty work and no lifting over 10 pounds, Plaintiff was accused of providing "fake" doctor's notes.

44. Plaintiff was then abruptly terminated by voicemail two weeks later on or about November 29, 2022, and provided with a termination letter dated November 23, 2022, but stating that her termination was effective November 7, 2022.

45. Prior to her termination, Defendant's management failed to properly accommodate Plaintiff by requiring her to work against her doctors' restrictions of no lifting over 10 pounds and performing mostly sedentary work and then terminating her for her inability to physically work against her doctors' restrictions, which would put herself and the assigned resident at risk of bodily harm.

46. Notably, Plaintiff's non-disabled co-worker, Browne, who had been assigned to assist Plaintiff with the resident on November 5, 2022, but failed to do so, was not terminated for alleged neglect of the resident.

47. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, discrimination, and retaliation, as a result of (1) her actual/perceived/record of health conditions; (2) her requested accommodations (set forth *supra*); (3) Defendant's failure to properly accommodate her health conditions; and (4) Plaintiff's express concerns of Defendant's failure to properly accommodate her health conditions.

48. Plaintiff also believes and therefore avers that her disabilities were a motivating and determinative factor in the termination of her employment with Defendant.

## COUNT I
## Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
[3] Hostile Work Environment; and [4] Failure to Accommodate)

49.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50.     Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

51.     Plaintiff kept Defendant's management informed of her serious medical conditions and need for medical treatment and other accommodations.

52.     Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

53.     Plaintiff requested reasonable accommodations from Defendant including but not limited the light duty work and intermittent time off to care for and treat for her serious health conditions.

54.     Plaintiff was subjected to hostility and animosity by Defendant's management as a result of her serious health conditions and requested accommodations.

55.     Plaintiff was terminated from her employment with Defendant, on or about November 29, 2022 (effective November 7, 2022), in close proximity to her requests for/utilization of reasonable medical accommodations.

56.     Prior to her termination, Defendant's management failed to properly accommodate Plaintiff by requiring her to work against her doctors' restrictions of no lifting over 10 pounds and performing mostly sedentary work and then terminating her for her inability to physically work against her doctors' restrictions, which would put herself the assigned resident(s) at risk of bodily harm.

57. Prior to her termination, Plaintiff complained to Defendant's management and her worker's compensation representative of Defendant's management's failure to properly abide by her doctors' recommended medical restrictions (set forth *supra*).

58. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, discrimination, and retaliation, as a result of (1) her actual/perceived/record of health conditions; (2) her requested accommodations (set forth *supra*); (3) Defendant's failure to properly accommodate her health conditions; and (4) Plaintiff's express concerns of Defendant's failure to properly accommodate her health conditions.

59. Plaintiff also believes and therefore avers that her disabilities were a motivating and determinative factor in the termination of her employment with Defendant.

60. Defendant's actions as aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.     Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801

Dated:  October 24, 2024

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| Zakiyyah Moore | : | CIVIL ACTION |
| v. | : | |
| Elwyn of Pennsylvania and Delaware | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x)

| 10/24/2024 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

**RELATED CASE IF ANY:** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

A. *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  *see certification below*
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

B. *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MOORE, ZAKIYYAH

**DEFENDANTS**
ELWYN OF PENNSYLVANIA AND DELAWARE

**(b)** County of Residence of First Listed Plaintiff: New Castle
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/Accommodations
- [X] 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

**TORTS — PERSONAL INJURY**
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**PRISONER PETITIONS**
Habeas Corpus:
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty
Other:
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark
- 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit (15 USC 1681 or 1692)
- 485 Telephone Consumer Protection Act
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101)
Brief description of cause:
Violations of the ADA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 10/24/2024

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____